# Commonwealth *v.* Balanzo, Appellant.

*Criminal law—Manslaughter—Evidence — Cross-examination— Scope of examination—District attorney—Improper remarks—Instructions to disregard—Charge—Self-defense.*

1. On the trial of an indictment for murder a conviction of voluntary manslaughter will be sustained where it appeared that defendant shot and killed a police officer in uniform while the latter was subjecting him to a search for weapons without a warrant on a public street late at night, and in resisting the search defendant fired five shots at the deceased.

2. Where no dying declaration was offered in evidence, and the court permitted defendant's counsel to cross-examine a witness for

the Commonwealth as to what, if anything, was stated by the deceased in the hospital, and it appeared that no statement except certain incoherent utterances was made, it was not error for the court to refuse to permit the cross-examination of such witness as to what was said by the attending physicians to the deceased.

3. Where on the trial of such case the district attorney exhibited deceased's coat to the jury and said "this is the place where the bullet came out," and thereafter in making an offer as to what he intended to prove in rebuttal stated that the story of one of defendant's witnesses was "cooked up," and at another time that the "defendant was telling his story the way his attorneys wanted him to tell it," the court did not err in refusing to withdraw a juror, especially where certain of the remarks referred to were not excepted to and the others the court directed the jury to disregard.

4. Where defendant submitted a point for charge to the effect that deceased had no right to search the defendant without a warrant the court did not err in qualifying its affirmance thereof by stating that a mere attempted search without more would not justify or excuse killing the officer.

5. Where defendant requested the court to charge that if the jury believed that the deceased assaulted the prisoner with his club and the prisoner was in danger of losing his life or of great bodily harm, or it reasonably so appeared to him, and the danger, either real or apparent, was so great that it could not be averted without inflicting serious injury upon the deceased, or even taking his life, the prisoner would be excusable in so doing, the trial judge properly qualified its affirmance of such point by stating, "but reasonable apprehension of such danger as is referred to in this point, where the apparent danger turns out to be apparent only, and not actual, must have a reasonable basis on which to rest, before the taking of human life would be warranted thereby."

Argued March 23, 1918. Appeal, No. 51, Oct. T., 1918, from judgment of O. & T. Beaver Co., June Sessions, 1917, No. 8, on verdict of guilty of voluntary manslaughter in case of Commonwealth v. Emil Balanzo. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Indictment for murder. Before CORBET, P. J.

From the record it appeared that defendant, Emil Balanzo, in company with four other men, was walking

along a public street in the Borough of Midland, Beaver
County, about midnight on May 12, 1917.   They met
Michael T. Ford and Edward McKay, two police officers
of the said borough, on duty.   Ford wore the full uni-
form of a police officer, but McKay was in plain clothes.

The prisoner and the men in company with him, on
the approach of the officers, started to scatter.   The of-
ficers then commanded defendant and the others to stop
and to submit to a search.   The men in company with
the defendant stopped and were searched, but the pris-
oner attempted to get away.

Ford followed defendant and was in the act of turning
him around preparatory to making a search for con-
cealed weapons when defendant drew a revolver and
fired five shots at him, one of which passed through his
chest, one through his abdomen, and one through the ball
of his foot.   Ford died about nine hours later in a hos-
pital.

On the trial no dying declaration of the deceased was
offered in evidence, the only evidence as to what he said
being that while in the hospital he made certain inco-
herent utterances.

The trial judge sustained an objection to the question
put to one of the Commonwealth's witnesses, on cross-
examination, as to what statement the doctors made to
the deceased in the hospital (3, 4, 5, and 6).

On the trial the district attorney exhibited deceased's
coat to the jury stating "this is the place where the bullet
came out" (indicating) (14).   Later during the trial he
stated that the story of one of defendant's witnesses was
"cooked up" (26), and at another time that "defendant
was telling his story the way his attorneys wanted him
to tell it" (27), the court directed the jury to disregard
the first and last mentioned utterances and ruled that
the reference to the testimony of defendant's witness as
"cooked up" was not improper, as it was made by the
district attorney in addressing the court in reference to

what he intended to prove in rebuttal, and no exception to such ruling was taken at the time.

Defendant's fifth point for charge and the court's answer thereto were as follows:

"There is no evidence in this case that the deceased and his fellow officer had any information or even suspicion that the prisoner had a weapon on his person, and it being admitted that there was no warrant against the prisoner or any of his companions, the attempted search of the prisoner for weapons was an unlawful act upon the part of the deceased and his fellow officer.

"Answer. Affirmed. Nevertheless, a mere attempted search without more, would not justify or excuse the killing of the officer. One is not warranted in taking human life to repel or redress a wrong of small magnitude.

Defendant's sixth point for charge and the court's answer thereto were as follows:

"If the prisoner and his companions were walking quietly and peaceably along the public street, the deceased and his fellow officer had no legal right to stop them and search them without a warrant, and in so doing the deceased and his fellow officer were guilty of an unlawful act.

"Answer. Affirmed. Nevertheless, so doing, without more, would not justify or excuse the killing of Michael T. Ford."

Defendant's seventh point for charge and the court's answer thereto were as follows:

"If the jury believed from the evidence that the deceased assaulted the prisoner with his club, and the prisoner's life was in danger, or he was actually in danger of great bodily harm, or if it so reasonably appeared to him, and the danger, either real or apparent, was so great that it could not be averted, without inflicting serious injury upon the deceased or even taking his life, the prisoner would be excusable under the law in so doing, in order to save his own life or avert great bodily harm.

"Answer. Affirmed. But reasonable apprehension of such danger as is referred to in this point, where the apparent danger turns out to be apparent only, and not actual, must have a reasonable basis on which to rest, before the taking of human life would be warranted thereby."

The jury found a verdict of guilty of voluntary manslaughter upon which the maximum sentence was thereafter imposed. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence (3, 4, 5, and 6), alleged improper remarks by the district attorney (14, 26, and 27), and the charge of the court (32, 33, and 34) and the judgment of sentence.

*Lawrence M. Sebring,* with him *John B. McClure,* for appellant.—The questions involved are: (1) May a defendant on trial for murdering a policeman, show that the officer was drunk, that he attempted an illegal search of defendant, and show that after the infliction of the mortal wound, the officer could have an ante mortem statement; (2) what are improper remarks by Commonwealth counsel in such a case, and was the jury adequately and correctly instructed as to the law of self-defense and manslaughter?

*James L. Hogan* and *Louis E. Graham,* District Attorney, with them, *Frank H. Laird,* for appellee.

PER CURIAM, June 3, 1918:

The questions raised on this appeal are within a narrow compass, and are briefly stated by counsel for the appellant. After duly considering them we find nothing in the forty-four assignments of error calling for a retrial of the case, and the judgment is, therefore, affirmed.